# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

WILLIAM ROYSTER, )
)
         Plaintiff, )
)
vs. )  CASE NO. _____
)
THE UNITED STATES OF AMERICA, )
(DO NOT SERVE) )
         Defendant. )

## FEDERAL TORT CLAIMS ACT COMPLAINT

## I.    INTRODUCTION:

1. This is an action against the Defendant, United States of America, brought pursuant to the Federal Tort Claims Act (FTCA), (28 U.S.C. §2671, et seq.) and 28 U.S.C. §1346(b)( l), for negligence and professional malpractice in connection with medical diagnosis and care provided to the Plaintiff, William Royster, (hereafter "Mr. Royster") by the Department of Veterans Affairs at the Kansas City Veterans Affairs Medical Center (hereafter, "KCVA").

## II.    JURISDICTION AND EXHAUSTION OF ADMINISTRATIVE CLAIMS:

2. Jurisdiction is proper under 28 U.S.C. § 1346(b)(l). This U.S. District Court has exclusive jurisdiction to hear FTCA claims.

3. On November 18, 2014, Mr. Royster was first informed by Defendant's employee, Dr. Shreeja Kumar, that he did not have bipolar disorder, a diagnosis that had been made and continually affirmed by KCVA physicians since April of 2004.

4. On February 18, 2015, pursuant to 28 U.S.C. § 2675(a), written notice by way of a completed Standard Form 95 together with an addendum and all pertinent supportive documentation of Mr. Royster's administrative tort claim was presented to the appropriate

Federal Agency, the U.S. Department of Veterans Affairs, by Mr. Royster's legal representative. (See Attached Exhibit A)

     5.     On August 4, 2015, the Defendant denied Mr. Royster's claims. (See Exhibit B).

     6.     Consistent with the dictates of 28 U.S.C. § 2401(b), Mr. Royster filed this action within six months of the Defendant's denial of his claims.

## III.   VENUE:

     7.     Consistent with 28 U.S.C. § 1402(b), venue is proper in this district and division in that that at all times relevant, Mr. Royster was and currently resides in the Western District of Missouri in the Western Division and the acts and omissions complained of occurred in the Western District of Missouri in the Western Division.

## IV.   PARTIES:

### A)   The Plaintiff:

     8.     The Plaintiff, Mr. William Royster, (hereafter "Mr. Royster") served in the United States Navy as a naval aviator from March 7, 1986 through December 31, 1997. Mr. Royster was honorably discharged from the Navy on December 31, 1997.

     9.     On June 4, 1996 while flying an A-6 Intruder jet (an all-weather medium attack aircraft) for a training mission associated with Dessert Storm, Mr. Royster was shot down and received treatment for various physical injuries incurred from ejecting from his aircraft.

     10.     Mr. Royster's treatment for the physical injuries and other medical and psychiatric conditions continued after his discharge from the Navy at the KCVA.

### B)   The Defendant:

11. At all times relevant the Defendant owned, operated and controlled a certain health care facility known as the Kansas City Veterans Administration Medical Center (hereafter "KCVA") located at 4801 Linwood Blvd. Kansas City, Missouri.

12. At all times relevant certain physicians of KCVA provided diagnosis, care and continuing treatment to Mr. Royster at the KCVA.

13. From April 28, 2004 to November 17, 2014, KCVA was the exclusive provider of psychiatric diagnosis, care and treatment of Mr. Royster.

14. Consistent with 28 U.S.C. §§ 1346(b)(1), 2675, 2672 and 2679, at all times relevant, all physicians involved in the diagnosis, care and continuing treatment of Mr. Royster at the KCVA were employees of the Defendant and were acting within the scope of their office or employment with KCVA.

## V. FACTUAL ALLEGATIONS

15. On June 4, 1996 while flying an A-6 Intruder jet (an all-weather medium attack aircraft) for a training mission associated with Dessert Storm, Mr. Royster was shot down and received treatment for various physical injuries incurred from ejecting from his aircraft.

16. On November 26, 1996, Dr. Lancy Allyn, a Navy orthopedic surgeon, informed Mr. Royster that the injuries Mr. Royster's sustained in the June 4, 1996 incident would not limit his ability to serve as a pilot of commercial airplanes.

17. Following his discharge from the Navy, Mr. Royster continued the treatment for his injuries at the KCVA.

18. Subsequently, Mr. Royster was provided treatment for his injuries by various physicians at the KCVA.

19.     Following his discharge from the Navy, Mr. Royster engaged in flight training that culminated in an FAA Airline Transport Pilot (ATP) Certificate with type ratings for the Boeing 737, 757 and 767 aircraft.

20.     Concurrently with his ATP Certificate, Mr. Royster held an FAA First Class Medical Certificate.

21.     In January of 1998, Mr. Royster was hired by United Airlines as a First Officer.

22.     From 1998 through April of 2004, Mr. Royster served as a First Officer flying Boeing 737, 757 and 767 commercial aircraft for United Airlines.

23.     In June of 2003, during the treatment for his physical injuries, a KCVA physician suggested that Mr. Royster go to the KCVA counseling center to be evaluated for possible post-traumatic stress disorder.

24.     On June 13, 2003, Mr. Royster was seen by KCVA staff psychiatrist, Rebecca Merritt, M.D.

25.     After a few more visits with Dr. Merritt, on or about April 28, 2004, Dr. Merritt, M.D., diagnosed Mr. Royster with Bipolar Disorder Type II.

26.     On or about April 28, 2004, Defendant's employee, Dr. Merritt informed Mr. Royster that her diagnosis of Bipolar Disorder Type II diagnosis is a permanent, lifelong diagnosis.

27.     On or about April 28, 2004, Defendant's employee, Dr. Merritt informed Mr. Royster that based upon the KCVA diagnosis of Bipolar Disorder II, Mr. Royster could not work in any capacity and advised Mr. Royster to apply for disability benefits.

28.     Based upon the diagnosis of Bipolar Disorder II, Mr. Royster was forced to be medically grounded from his position as a commercial pilot with United Airlines and was subsequently medically retired.

29.     From April 28, 2004 through November 17, 2014, the Defendant's, KCVA physicians, were the exclusive provider of psychiatric diagnosis, care and treatment for Mr. Royster.

30.     From April 28, 2004 through November 17, 2014, KCVA's psychiatric physicians and those practicing in other medical specialties, continued to affirm and re-affirm the KCVA diagnosis of Bipolar Disorder II as the proper and working diagnosis for Mr. Royster throughout his medical chart.

31.     From April 28, 2004 through November 17, 2014, KCVA's psychiatric physicians and those practicing in other medical specialties that provided care to Mr. Royster, repeatedly advised Mr. Royster that the KCVA diagnosis of Bipolar Disorder II was the proper and working diagnosis for Mr. Royster.

32.     From April 28, 2004 through November 17, 2014, KCVA's psychiatric physicians continued to prescribe medications to Mr. Royster for his Bipolar Disorder II diagnosis.

33.     From April 28, 2004 through November 17, 2014, KCVA's physicians and staff of many various medical specialties continually made notations in Mr. Royster's voluminous KCVA medical chart that Mr. Royster has a diagnosis of Bipolar Disorder II.

34.     From April 28, 2004 through November 17, 2014, KCVA physicians and nurses continually informed Mr. Royster that his Bipolar Disorder II condition was permanent.

35.     From April 28, 2004 through November 17, 2014, the Defendant, through its KCVA employees, concealed from Mr. Royster pertinent facts including the fact that their diagnosis of Bipolar Disorder II was an incorrect diagnosis.

36.     On February 20, 2013, Mr. Royster saw KCVA psychiatrist, Dr. Shreeja Kumar, who noted that Mr. Royster had lost his job as a pilot due to KCVA's diagnosis of Bipolar Disorder II.

37.     On July 30, 2013, KCVA officially assigned Dr. Kumar to take over Mr. Royster's psychiatric evaluation and treatment.

38.     From February 20, 2013 through November 17, 2014, Dr. Kumar undertook a thorough study of Mr. Royster's KCVA medical chart and engaged Mr. Royster in a numerous psychiatric examinations.

39.     On or about November 18, 2014, Dr. Kumar authored a letter that states that Mr. Royster has been under the treatment of the Behavioral Health Clinic at KCVA since June of 2003 and had been seen by several KCVA psychiatric physicians since then.

40.     In her November 18, 2014 letter, Dr. Kumar set forth her findings and impressions that included her opinion that: "From the review of the records, he [Mr. Royster] never had any manic symptoms and he never met the criteria for the diagnosis of bipolar disorder . . .Thus in my professional opinion, I do not believe that Mr. Royster has a diagnosis of bipolar disorder."

## VI.    CAUSES OF ACTION, NEGLIGENCE ALLEGATIONS:

41.     From April 28, 2004 through November 17, 2014, and at all times relevant, in providing diagnosis, care and treatment for Mr. Royster, the Defendant, by and through its agents and employees had a duty to provide diagnosis, care and treatment to Mr. Royster as a

reasonably prudent and careful health care provider would have under similar circumstances consistent with the standard of care.

42.     From April 28, 2004 through November 17, 2014, and at all times relevant, in providing diagnosis, care and treatment for Mr. Royster, the Defendant, by and through its agents and employees, breached the duty they owed to the Plaintiff, William Royster, by failing to provide diagnosis, care and treatment to Mr. Royster as a reasonably prudent and careful health care provider would have under similar circumstances consistent with the standard of care in one or more of the following respects:

    a.    Failed to adopt and follow accepted standards of care, best practices and guidelines to assess and diagnose Bipolar Disorder II;

    b.    Failed to properly assess, identify and categorize Mr. Royster's symptoms;

    c.    Failed to employ the appropriate methods and modalities required for the proper diagnosis of Bipolar Disorder II prior to reaching the diagnosis of Bipolar Disorder II for Mr. Royster;

    d.    Improperly diagnosed Mr. Royster with Bipolar Disorder II;

    e.    Failed to periodically re-evaluate the diagnosis of Bipolar Disorder II ascribed to Mr. Royster;

43.     As a proximate result of one or more of the foregoing negligent acts or omissions of Defendant, the Plaintiff, Mr. Royster, suffered permanent injuries; has experienced and will experience future pain and suffering, great grief, sorrow, and mental suffering; has incurred and in the future will incur obligations for substantial sums of money for medical expenses and has lost money that would have otherwise been earned by him and has an impaired earning capacity.

44.     Pursuant to 28 U.S.C. § 1346(b) the law of the state where the act or omission occurred, Missouri, determines the liability of the United States. Accordingly, Plaintiff's counsel attaches an affidavit in compliance with Mo. Rev. Stat. § 538.225. (See Exhibit C).

WHEREFORE, the Plaintiff, William Royster, demands judgment against the Defendant, UNITED STATES OF AMERICA, in the sum of $35,000,000.00, together with interest, attorneys' fees, the costs of this action and such further and additional relief at law or in equity that this Court may deem proper.

Dated this 2nd day of October, 2015.

Respectfully submitted,

DOLLAR, BURNS & BECKER, LC

/s/Tim E. Dollar
Tim E. Dollar     MO #33123
Thomas J. Hershewe     MO #57642
1100 Main Street, Suite 2600
Kansas City, MO 64105
(816) 876-2600
(816) 221-8763 (fax)
timd@dollar-law.com
tom@dollar-law.com

Paul R. Borth, *Pro hac vice* pending:
BARNETT & BORTH, LLC
800 Waukegan Road, Suite 200
Glenview, Illinois 60025
(847) 724-5520
prb@barnettlegal.com

ATTORNEYS FOR PLAINTIFF
WILLIAM ROYSTER

_Amended_

<table>
<tr><td colspan="2"><b>CLAIM FOR DAMAGE,<br>INJURY, OR DEATH</b></td><td colspan="2"><b>INSTRUCTIONS:</b> Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.</td><td>FORM APPROVED<br>OMB NO. 1105-0008</td></tr>
</table>

**1. Submit to Appropriate Federal Agency:**

St. Louis Office of Regional Counsel, Region 12
Building 25, Room 308
1 Jefferson Barracks Drive
St. Louis, MO 63125

**2. Name, address of claimant, and claimant's personal representative if any.** (See instructions on reverse). Number, Street, City, State and Zip code.

William E Royster,          Paul Borth, Representative
3500 Gladstone             800 Waukegan Road Ste 200
Kansas City MO 64123    Glenview,IL 60025

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | 07/09/1962 | Divorced | 4-1-04-11-18-14   N/A | N/A |

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Attached Addendum and Exhibits delivered on January 18, 2015.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See Attached Addendum and Exhibits delivered on January 18. 2015.

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See Attached Addendum and Exhibits | |

**12. (See instructions on reverse).       AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | $35,000,000.00 | N/A | $35,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| _AS Representative for William Royster_ | 847-724-5520 | 12/18/2015 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4[  ]

**EXHIBIT**

**A**

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

N/A

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

## POWER OF ATTORNEY
## ATTORNEY AUTHORIZATION TO FILE FEDERAL TORT CLAIM

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, WILLIAM EDWARD ROYSTER, of the 3500 Gladstone Blvd. Kansas City, MO 64123, has made, constituted and appointed PAUL BORTH of the law firm of Barnett & Borth, LLC of 800 Waukegan Road, Suite 200 Glenview IL 60025, as my true and lawful attorney in my name, place and stead, to represent me in all aspects of my Federal Tort Claim against the Veterans Administration and to file a Standard Form 95 with the Department of Veterans Affairs or any other appropriate Federal agency. As such, I give and grant unto my attorney, full power and authority to do and perform every act necessary to be done in the premises as fully to all intents and purposes as I might or could do personally.

IN WITNESS THEREOF, I have hereunto set my hand and seal this 19th day of December, 2014.

_____
William Edward Royster

APPROVED:

I, William Edward Royster, agree to this Power of Attorney.

_____
William Edward Royster

SUBSCRIBED AND SWORN TO before me this

__19__ day of __December__ , 2014.

_____
Notary Public

OFFICIAL SEAL
CYNTHIA K ESPINOSA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/16/17



**DEPARTMENT OF VETERANS AFFAIRS**
OFFICE OF REGIONAL COUNSEL
1 JEFFERSON BARRACKS DRIVE
SAINT LOUIS, MISSOURI 63125
TELEPHONE: (314) 845-5050
FACSIMILE: (314) 845-5057

<u>CERTIFIED MAIL</u>

August 4, 2015

Paul Borth, Esq.
Barnett & Borth, LLC
800 Waukegan Road, Ste. 200
Glenview, IL 60025

Subject:    Administrative Tort Claim GCL-9991

Dear Mr. Borth:

This office has completed investigation of the above-referenced matter under the Federal Tort Claims Act (FTCA), and it is denied. The FTCA provides a legal remedy enabling an individual to recover damages under circumstances where the United States, if it were a private person, would be liable. Our review did not find any negligent or wrongful act or omission on the part of a Department of Veterans Affairs (VA) employee acting within the scope of his or her employment that resulted in harm regarding your allegation that VA providers at the VA Medical Center in Kansas City, Missouri were negligent in misdiagnosing your client, Mr. William Royster, with Bipolar Disorder.

Further action on this matter may be instituted in accordance with the FTCA, sections 1346(b) and 2671-2680, title 28, U.S.C., which provides that a tort claim that is administratively denied may be presented to a federal district court for judicial consideration. Such a suit must be initiated within six months of the date of mailing of this notice of final denial, as shown by the date of this letter (section 2401(b), title 28, U.S.C.). If such a suit is filed, the proper party defendant would be the United States, not VA. Alternatively, a request for reconsideration of the claim by this office may be filed by: (1) mail to Office of General Counsel (021B), 810 Vermont Avenue, N.W., Washington, DC 20420; (2) fax to 202-273-6385; or (3) e-mail to OGC.torts@mail.va.gov. VA must receive such a request within six months of the date of mailing of this notice of final denial as shown by the date of this letter. If a request for reconsideration is made, VA shall have six months from receipt of that request during which the option to file suit in an appropriate federal court under 28 U.S.C. 2675(a) is suspended.

Please note that FTCA claims are governed by a combination of federal and state laws. Some state laws may limit or bar a claim or law suit. VA legal staff handling FTCA claims work for



**EXHIBIT**

**B**

the federal government, and cannot provide advice regarding the impact of state laws or state filing requirements.

Sincerely yours,

Laurette M. Hucker
Acting Regional Counsel

| STATE OF ILLINOIS | ) |
|---|---|
| | )ss |
| COUNTY OF COOK | ) |

## AFFIDAVIT FOR AN ACTION IN MEDICAL MALPRACTICE
## PURSUANT TO Mo.Rev.Stat. § 538.225

RE:     William Royster v. United States of America, KCVA

I Paul R. Borth, on oath and under penalty of perjury hereby state as follows:

1)     I am counsel for the Plaintiff, William Royster in the matter of William Royster v. United States.

2)     I have provided all pertinent medical records and damage documentation to the following legally qualified health care provider and have conferred with such provider concerning the facts and circumstances of Mr. Royster's claims.

Michael Jarvis, PhD, MD
Washington University School of Medicine
Professor and Vice Chairman for Clinical Affairs Director, Inpatient Psychiatry
Department of Psychiatry Forensic Service Campus Box 8134
Suite 15340
660 S. Euclid
St. Louis, MO. 63110

3)     Dr. Jarvis' is licensed to practice medicine in all branches by the State of Missouri, is board certified in the area of psychiatry, and is actively engaged in the practice of psychiatry, substantially the same specialty, same school of medicine and profession as the KCVA physicians involved in the diagnosis, care and treatment of the Plaintiff, William Royster.   Further details concerning Dr. Jarvis' qualifications are set forth in his curriculum vitae attached hereto as Exhibit 1.

4)     I have obtained from Dr. Jarvis his written opinions that the defendant health care provider, the psychiatrists employed by KCVA, failed to use such care as a reasonably prudent and careful health care providers would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed by Mr. Royster in his Complaint.

1



Affiant Further Sayeth Naught,

If sworn as a witness, I can testify competently to the foregoing.

Signed: _____ Date: 9-18-15 _____

Paul R. Borth, Attorney for Plaintiff, William Royster
BARNETT & BORTH, LLC
800 Waukegan Road, Suite 200
Glenview, Illinois 60025
(847) 724-5520
prb@barnettlegal.com

_____

Signed and sworn to before me, a Notary Public, of Cook County, Illinois, by

CYNTHIA K. ESPINOSA, this 18 day of September , 2015

_____
Notary Public

OFFICIAL SEAL
CYNTHIA K ESPINOSA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/16/17

2

# CURRICULUM VITAE
## Michael R. Jarvis, Ph.D., M.D.

DATE:                              June 2015

DATE OF BIRTH:                     June 16, 1955

CITIZENSHIP:                       USA

ADDRESS/TELEPHONE                  Department of Psychiatry
NUMBERS:                           Washington University School of Medicine
                                   660 S. Euclid
                                   Campus Box 8134
                                   St. Louis, MO 63110
                                   314-362-1816
                                   314-362-7017 (Fax)

PRESENT POSITION:                  Vice Chairman of Clinical Affairs, Dept. of Psychiatry
                                   Washington University School of Medicine
                                   St. Louis, MO

                                   Professor of Psychiatry
                                   Washington University School of Medicine
                                   St. Louis, Missouri

                                   Medical Director of Inpatient Psychiatry
                                   Barnes-Jewish Hospital
                                   St. Louis, Missouri

EDUCATION:

        1977              B.S., University of Minnesota, Minneapolis, Minnesota

        1980              M.S., University of Illinois, Urbana, Illinois

        1982              Ph.D., University of Illinois, Urbana, Illinois

        1985              M.D., Washington University School of Medicine
                          St. Louis, Missouri

        1985 – 1989       Residency in Psychiatry
                          Washington University School of Medicine
                          Barnes Hospital, St. Louis, Missouri

EXHIBIT

1

exhibitsticker.com

Curriculum Vitae
Michael R. Jarvis, Ph.D., M.D.

ACADEMIC POSITIONS/ EMPLOYMENT:

| | |
|---|---|
| 2006 | Professor of Psychiatry<br>Department of Psychiatry<br>Washington University School of Medicine<br>St. Louis, MO. |
| 1996 - 2006 | Associate Professor of Psychiatry<br>Department of Psychiatry<br>Washington University School of Medicine<br>St. Louis, Missouri |
| 1990 – 1996 | Assistant Professor of Psychiatry<br>Department of Psychiatry<br>Washington University School of Medicine<br>St. Louis, Missouri |
| 1989 - 1990 | Instructor<br>Department of Psychiatry<br>Washington University School of Medicine<br>St. Louis, Missouri |
| 1989 – 1990 | Chief Resident<br>Department of Psychiatry<br>Washington University School of Medicine<br>St. Louis, Missouri |
| 1985 – 1989 | Assistant in Psychiatry<br>Department of Psychiatry<br>Washington University School of Medicine<br>St. Louis, Missouri |
| 1983 | Summer Research Fellowship<br>Laboratory of Carl F. Pierce, M.D.<br>Washington University School of Medicine<br>St. Louis, Missouri |
| 1978 – 1982 | Research Assistant<br>Laboratory of Edward W. Voss, Ph.D.<br>University of Illinois<br>Urbana, Illinois |
| 1976 – 1977 | Research Assistant<br>Laboratory of Dennis W. Watson, Ph.D.<br>University of Illinois<br>Urbana, Illinois |

Curriculum Vitae
Michael R. Jarvis, Ph.D., M.D.

UNIVERSITY & HOSPITAL APPOINTMENTS
AND COMMITTEES

| | |
|---|---|
| 2012 | Heath Information Management Committee |
| 2010 - | Meaningful Use Work Team |
| 2010 - 2011 | Safety & Quality Council of MEC |
| 2010 | Psychiatry & Medicine Ad Hoc Team Meeting |
| 2008 - | Pharmacy and Therapeutics Committee of Barnes Jewish Hospital |
| 2006 - | Vice Chairman of Clinical Affairs, Dept of Psychiatry, Washington University School of Medicine |
| 2006 - | Executive Committee, Dept of Psychiatry, Washington University School of Medicine |
| 2006 - | Director of Electroconvulsive Therapy |
| 2003 - 2008 | Medical Staff Performance Improvement Oversight Committee |
| 2002 - 2007 | Physician/HIM Process Improvement Team |
| 2002 - 2013 | Chair, Health Advisory Committee, Graduate Medical Education Consortium |
| 2001 - 2007 | BJ Health Information Management Committee |
| 1993 - | Medical Director of Inpatient Psychiatry, Barnes-Jewish Hospital |
| 1992 - | Psychiatry Residency Education Committee |
| 2002 – 2004 | Consultant, Washington University Care Coordination Demonstration Project |
| 2000 – 2002 | Care Partners Physician Advisory Committee, Behavioral Health Subgroup |
| 2000 – 2001 | BJC Medical Records Committee |
| 1996 – 1998 | WUMS Medicare Education Rules Compliance Program Committee |
| 1996 – 2000 | Physician Advisory Panel for Barnes-Jewish Hospital Reengineering |
| 1995 – 1998 | BJC Medical Cost Management Working Team |
| 1995 – 1997 | Barnes-Jewish Electronic Medical Record Development Committee |
| 1995 – 1996 | Co-Chair, Barnes-Jewish Utilization Management Committee |
| 1994 – 1996 | Patient Care Quality Improvement Committee |
| 1992 – 1995 | Chairman, Barnes Hospital Utilization Management Committee |
| 1992 – 1994 | Barnes Hospital Quality Improvement Committee and Steering Committee |
| 1992 – 1994 | Standing Committee on Hospital Safety |
| 1990 – 1992 | Assistant Director of Inpatient Psychiatry, Barnes Hospital |
| 1990 – 1995 | Department of Psychiatry Quality Improvement and Utilization Review Committee |
| 1990 – 1995 | Emergency Department Committee, Barnes Hospital |

MEDICAL LICENSURE AND BOARD CERTIFICATION:

| | |
|---|---|
| 1991 | Diplomate: American Board of Psychiatry & Neurology |
| 1988 | Missouri Medical License (R8H00) |
| 1986 | Diplomate:  National Board of Medical Examiners |

Curriculum Vitae
Michael R. Jarvis, Ph.D., M.D.

HONORS AND AWARDS:

WUMS 2014 Distinguished Educator Award
  For House Staff Teaching
Resident Mentoring Award
  Psychiatry Resident Class of 2014
Excellence in Teaching Award
  Psychiatry Resident Class of 2011
St. Louis Magazine Best Doctor, 2006 - 2014
Guide to America's Top Psychiatrists, 2007
Clinical Teacher of the Year Award, WUMS Class of 2007
Fellow of the American Psychiatric Association, 2003
Barnes-Jewish Hospital Quality Leadership Award, 1995
Osler Institute Teaching Award, 1995
American Psychiatric Association
Burroughs Wellcome Fellowship, 1987 - 1989
Sidney I. Schwab Prize in Psychiatry, 1985
Washington University Grant, 1982 – 1985
R. Emerson Memorial Grant for Excellence in Undergraduate
Teaching Within the School of Life Sciences
University of Illinois – 1981, 1982
United States Public Health Service Trainingship, 1978
University of Illinois Graduate Fellowship, 1977 - 1978
Graduated Summa Cum Laude - University of Minnesota, 1977
Sigma Xi Outstanding Undergraduate Research Award, 1977
Minnesota State Scholarship, 1973 – 1977
Tozer Undergraduate Fellowship, 1973 – 1977

PROFESSIONAL SOCIETIES
AND ORGANIZATIONS:

| | |
|---|---|
| 1987 - | American Psychiatric Association |
| 1987 - | Eastern Missouri Psychiatric Society |
| 1995 - 1997 | Secretary/Treasurer |
| | Eastern Missouri Psychiatric Society |
| 1994 - 1998 | American College of Physician Executives |
| 1993 - 2003 | American Academy of Clinical Psychiatrists |
| 1991 - 1994 | Association of Directors of Medical Student Education in Psychiatry |
| 1990 - 2000 | American Association for Geriatric Psychiatry |

INVITED PROFESSORSHIPS
AND LECTURESHIPS:

Rational Suicide
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 2011

Suicide of Psychiatric Inpatients
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 2009

Curriculum Vitae
Michael R. Jarvis, Ph.D., M.D.

Fundamentals of Psychotherapy: Series Coursemaster
Part 2: Implicit Psychotherapy
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 2009
Disclosure of Adverse Events
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 2007

Alternative Therapies in Treatment of Mental Illness
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 2006

Psychiatric Illness and Violence
"Violence and Mental Illness" United States Attorney's Office –
Issues in Psychiatric Defenses, 2006

Basic Psychopharmacology
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 2005

ECT in a Litigious Society: Medicolegal Principles
Procedures for Psychiatric Disorders:
Improving the Present, Looking to the Future
Washington University School of Medicine, 2005

Psychiatry and Law: Deposition
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 2004

Diagnosis and Treatment of Schizophrenia
8th Annual Defense Counsel Seminar
BJC & Washington University School of Medicine, 2002

Malpractice: Facts, Opinions, Beliefs
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 2002

Electroconvulsive Therapy: Indications and Contraindications:
A Clinical Update
Washington University School of Medicine, 2002

Pharmacologic Treatment of Behavioral Disorders in Adults
With Mental Retardation
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 2000

Opportunities for Improving Patient Care through Social Work
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 1999

Curriculum Vitae
Michael R. Jarvis, Ph.D., M.D.

...Oh, By the Way, I'm Pregnant, Use of Psychiatric Medication
During Pregnancy
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 1998

Current Psychiatry Quality Improvement Efforts at
Barnes-Jewish Hospital
Missouri Patient Care Review Foundation
Mental Health Topic Development Group, 1996

Predictors of Response & Rapid Cycling in Bipolar Patients,
Eastern Missouri Psychiatric Society, 1995

Physician Role in Elder Abuse
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 1995

Treatment of Depression by Primary Care Physician
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 1993
Medical Student Question Bank:
Annual Conference of Association of Directors of
Medical Student Education in Psychiatry, 1992

Indicators of Psychiatric Hospitalization
Wednesday Research Seminar
Department of Psychiatry
Washington University School of Medicine, 1992

Keeping the Demons at Bay:  Maintenance ECT for
Unipolar Depression
Grand Rounds, Department of Psychiatry
Washington University School of Medicine, 1992

CONSULTING RELATIONSHIPS
AND BOARD MEMBERSHIPS

| | |
|---|---|
| 2008 | Neuronetics, Philadelphia, Pennsylvania |
| 2007 - 2011 | Corizan (formerly: Correctional Medical Services, Inc.) Medical Advisory Board St. Louis, Missouri |
| 1992 | Osler Institute, Terre Haute, Indiana |

RESEARCH SUPPORT:          **Governmental:**

Systems of Care for New Moms: Integrating Depression
Treatment (NUMOMS)
National Institute of Mental Health
Fund #R34MH083085-01, 8/08 – 07/11

Curriculum Vitae
Michael R. Jarvis, Ph.D., M.D.

NIMH Optimization of Electroconvulsive Therapy
Fund #51679, 2/5/01 – 1/31/06

Treatment of Depression in Parkinson's Disease
With Repetitive Transcranial Magnetic Stimulation
(Unfunded, application to FDA for IDE #), 2000

**Non-Governmental:**
Nitrous Oxide and depression
IRB ID #201204023

Completed Suicide Occurring on the Inpatient Unit
HRPO #09-1414   2009

rTMS Study (03-1111) Fund 942107
A Randomized, Parallel-Group, Sham-Controlled,
Multicenter Study to Evaluate the Efficacy and Safety of the
Neuronetics Model 2100 CRS  2004 - 2006

Study of Olanzapine plus Fluoxetine in Combination for
Treatment-Resistant Depression, Without Psychotic Features
Lilly (Protocol H6P-MC-HDAO) 2002

6-Week, Double-Blind, Randomized Multicenter, Flexible-Dose,
Placebo-Controlled Study of Pagoclone in Patients with
Generalized Anxiety Disorder
Parke-Davis 2000

Placebo-Controlled Olanzapine Monotherapy in the Treatment
of Bipolar I Depression
Lilly 2000

Open-Label Safety Study of Pregabalin (CI-1008) in Patients
with Anxiety Disorders
Pfizer (Fund #940869) 1999

A Placebo-Controlled Study of Pregabalin and Paroxetine in
Patients with Panic Disorder
Parke-Davis 1999

A Multicenter, Randomized, Double-Blind, Placebo-Controlled
Comparison of Paroxetine and Fluoxetine in the Treatment of
Major Depressive Disorder, Project Director
SmithKline Beecham Pharmaceuticals 1991

CLINICAL TITLES AND
RESPONSIBILITIES:

2006 -                    Vice Chairman of Clinical Affairs, Dept of Psychiatry
                         Washington University School of Medicine
                         St. Louis, Missouri

Curriculum Vitae
Michael R. Jarvis, Ph.D., M.D.

| | |
|---|---|
| 2006 - | Medical Director of Electroconvulsive Therapy Service<br>Barnes-Jewish Hospital<br>St. Louis, Missouri |
| 1993 - | Medical Director of Inpatient Psychiatry<br>Barnes-Jewish Hospital<br>St. Louis, Missouri |
| 1990 - | Attending on Resident Inpatient Service<br>Barnes Hospital<br>St. Louis, Missouri |
| 1990 – 1993 | Assistant Director of Inpatient Psychiatry<br>Barnes-Jewish Hospital<br>St. Louis, Missouri |
| 1989 – 1990 | Chief Resident<br>Department of Psychiatry<br>Washington University School of Medicine |

TEACHING TITLES AND
RESPONSIBILITIES:

| | |
|---|---|
| 1990 - | Attending Physician on Resident Inpatient Service<br>Barnes-Jewish Hospital |
| 1990 - | Lecturer<br>Basic Psychopharmacology for Psychiatry Residents<br>Washington University School of Medicine |
| 1990 - | Attending Physician<br>Third Year Medical Student Psychiatry Rotation<br>Washington University School of Medicine |
| 1991 – 1997 | Coursemaster<br>Introduction to Clinical Psychiatry<br>Second Year<br>Washington University School of Medicine |
| 1991 - 1993 | Lecturer in Advanced Psychopharmacology<br>Washington University School of Medicine |

BIBLIOGRAPHY:

PEER REVIEWED PUBLICATIONS:

1.  Jarvis MR, Voss EW Jr.: Ligand binding and physicochemical characteristics of an IgMmouse plasmacytoma ABCP-22. Mol. Immunol. 1981; 18:261-175

2.  Jarvis MR, Voss EW Jr.: Speculation: consequences of avidity in lymphocyte receptor-multivalent antigen binding in affinity maturation. Mol. Immunol. 1982; 19:525-533

Curriculum Vitae
Michael R. Jarvis, Ph.D., M.D.

3.    Jarvis MR, Voss, EW Jr.:  Determination of dissociation constants and ligand specificity of detergent solubilized surface membrane immunoglobulin A from MOPC-315. Mol. Immunol. 1982; 20;124-136

4.    Jarvis MR, Wasserman AL, Todd RD:  Case study:  acute psychosis in a patient with Epstein-Barr virus infection.  J. Am. Acad. Child Adolesc. Psychiatry 1990; 29:468-469

5.    Figiel GS, Hasten MA, Zorumski CF, Krishnan KRR, Doraiswamy PM, Jarvis MR, Smith DS: ECT induced delirium in depressed patients with Parkinson's disease.  J. Neuropsychiatr. Clin. Neurosci.  1991; 3:405-411

6.    Mattingly GW, Fiegel GS, Jarvis MR, Zorumski, CF:  Prospective uses of ECT in the presence of intracranial tumors.  J. Neuropsychiatr. 1991; 3:459-463

7.,   Jarvis MR, Fiegel GS, Suri RA:  Case report: pulmonary embolism and electroconvulsive therapy.  Ann. Clin. Psychiatry 1991; 3:329-331

8.    Jarvis MR:  Clinical pharmacokinetics of tricyclic antidepressant overdose. Psychopharmacology. Bull. 1991; 27:541-550

9.    Jarvis MR, Todd RD, Hickok JM, Ackerman KE, Sherman WR: Analysis of *Myo*-Inositol Monophosphatase from Transformed Human Lymphocytes. Lithium 1992; 3:49-54

10.   Fiegel GS, Zorumski CF, Doraiswamy PM, Mattingly GW, Jarvis MR:  Simultaneous major depression and panic disorder treatment with electroconvulsive therapy. J. Clin. Psychiatry 1992; 53:12-15

11.   Fiegel GS, Botteron K, Zorumski CF, Jarvis MR, Doraiswamy PM, Krishnan KRR:  The treatment of late onset psychosis with electroconvulsive therapy.  Internat. J. Geriatric Psychiatry 1992; 7:183-189

12.   Martin M, Figiel GS, Mattingly GW, Zorumski CF, Jarvis MR:  ECT-induced interictal delirium in patients with history of a CVA.  J. Geriatric Psychiatry and Neurology 1992; 5:149-155

13.   Jarvis MR, Smith J, Figiel GS:  Case report:  Cheyne-Stokes respiration and electroconvulsive therapy.  Ann. Clin. Psychiatry 1992; 4:181-183

14.   Jarvis MR, Goewert A, Zorumski CF:  Novel antidepressants and maintenance electroconvulsive therapy.  Ann. Clin. Psychiatry 1992; 4:275-284

15.   Figiel GS, DeLeo B, Zorumski CF, Baker K, Goewert A, Jarvis MR, Smith DS, Mattingly G, Ruwitch:  Combined use of labetalol and nifedipine in controlling the cardiovascular response from ECT.  J. Geriatric Psychiatry and Neurology 1993; 6:20-24

16.   Jarvis MR, Zorumski CF, Goewert A, Rasmussen KG:  Maintenance electroconvulsive therapy and seizure duration.  Convulsive Therapy 1993; 9:8-13

17.   Whiteford HA, Jarvis MR, Stedman TJ, Pond S, Csernansky JG:  Mianserin-induced up regulation of platelet serotonin receptors on normal human platelets in vivo.  Life Science 1993; 53:371-376

Curriculum Vitae
Michael R. Jarvis, Ph.D., M.D.

18.    Rasmussen KG, Zorumski CF, Jarvis MR:  Electroconvulsive therapy in patients with cerebral palsy.  Convulsive Therapy 1993; 9:205-208

19.    Rasmussen KG, Zorumski CF, Jarvis MR:  Possible impact of stimulus duration on seizure threshold in ECT.  Convulsive Therapy 1994; 10:177-180

20.    Rasmussen KG, Jarvis MR, Zorumski CF:  Ketamine anesthesia in electroconvulsive therapy. Convulsive Therapy 1996; 12:217-223

21.    Rasmussen KG, Jarvis MR, Zorumski CF:  Naloxone and ECT seizure length.  Convulsive Therapy 1997; 13:44-46

22.    Rasmussen KG, Jarvis MR, Zorumski CF, Ruwitch J, Best AM: Low dose atropine in electroconvulsive therapy. J. ECT 1999; 15:213-21

23.    Isenberg K, Kormos TC, Downs D, Pierce K, Svrakic D, Garcia K, Jarvis M, North C: Low Frequency rTMS Stimulation of the Right Frontal Cortex is as Effective as High Frequency rTMS Stimulation of the Left Frontal Cortex for Antidepressant-Free, Treatment-Resistant, Depressed Patients. Ann. Clin. Psychiatry, 2005; 17(3): 153- 159

24.    Zorumski CF, de Erausquin G, Dokucu M, Svrakic D, Garcia K, Jarvis M: Brain Stimulation & the Treatment of Refractory Psychiatric Disorders. Missouri Medicine, 2008; 105(1): 57-61

INVITED PUBLICATIONS:

1.    Jarvis MR:  Use of immobilized ligand in the study of solubilized surface membrane immunoglobulin, in The Fluorescein Hapten as a Molecular Probe in Immunology 1984 (edited by Voss EW Jr.); CRC Press, Inc., Boca Raton, Florida

2.    Jarvis MR, Voss EW Jr.:  Fluorescein in kinetic studies of affinity maturation, in The Fluorescein Hapten as a Molecular Probe in Immunology  1984; (edited by Voss EW Jr.) CRC Press, Inc., Boca Raton, Florida

3.    Jarvis, MR:  An evolutionary perspective of utilization review, St. Louis Metropolitan Medicine 1994: 16:20-21

LETTERS:

1.    Figiel GS, Jarvis MR:  Electroconvulsive therapy in a depressed patient receiving Bupropion.. J. Clin. Pharmacol. 1990; 10:376

2.    Rasmussen KG, Zorumski CF, Jarvis MR:  Cardiac safety of ECT.  Anesthesia and Analgesia 1993; 77:1307

3.    Lohr WD, Figiel GS, Hudziak JJ, Zorumski CF, Jarvis MR:  Maintenance electroconvulsive therapy in schizophrenia.  J. Clin. Psychiatry 1994; 55:217-218

4.    Rasmussen KG, Zorumski CF, Jarvis MR:  Asystole in ECT.  J. of Clinical Psychiatry 1994; 55:313-314

Curriculum Vitae
Michael R. Jarvis, Ph.D., M.D.

PATENT:

Jarvis MR, Fulton DS, The National Aeronautics and Space Administration:  Spillage detector for
liquid chromatography systems.  United States Patent: 4,591,838 May 27, 1986.

Revised: 5/28/2014